IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

COURTHOUSE NEWS SERVICE,

    Plaintiff,

v.

GREG SATTIZAHN, *in his official capacity as South Dakota State Court Administrator*; KARL THOENNES, *in his official capacity as the Circuit Court Administrator for Lincoln and Minnehaha Counties*; LIZ HASSETT, *in her official capacity as the Circuit Court Administrator for Pennington County,*

    Defendants.

Court Case No: 24-4051

## COMPLAINT

Plaintiff, Courthouse News Services ("Courthouse News"), by and through its undersigned attorneys, alleges as follows against Defendants Greg Sattizahn, in his official capacity as South Dakota State Court Administrator, Karl Thoennes, in his official capacity as the Circuit Court Administrator for Minnehaha and Lincoln County Circuit Courts, and Liz Hassett, in her official capacity as the Circuit Court Administrator for Pennington County Circuit Court (collectively "Defendants").

## INTRODUCTION

1. State and federal courts across the country have historically made new civil lawsuits available to the press and public as the court received them. Eighth Circuit Judge Bobby Shepherd recently described this traditional access during oral arguments in *Courthouse News Serv. v. Gilmer et al.* (8th Cir. No. 21-2632), a case involving the same issues as here: "There was a time

1

when—and some in this room may remember it—when you took a pleading to the courthouse and the clerk stamped it physically and it went into different bins and it was available immediately."

2. In the transition from paper filing to electronic filing ("e-filing"), federal courts and many state courts kept the tradition in place, making complaints available as they crossed the virtual intake counter. However, the South Dakota state courts, including those in Pennington, Minnehaha and Lincoln counties, did not.

3. Defendants withhold the e-filed civil complaints until court staff have finished a series of administrative steps commonly referred to as "processing." As a result, all newly e-filed civil complaints are effectively sealed upon receipt, with access commonly withheld for one to three days after filing.

4. The First Amendment to the United States Constitution provides the press and public with a qualified right of access to civil complaints. Such access is fundamental and essential to accurate and fair news reporting of civil court actions, which are often newsworthy. The right of access is thus vital to the public's ability to monitor the activities of the judicial branch of government. Any unjustified restriction on access is an unconstitutional restriction of the press's and public's ability to perform that important role. Whether new civil complaints are paper-filed or e-filed, the qualified First Amendment right of access attaches on receipt, when a new filing is submitted to, or deposited with, the clerk.

5. Court policies and practices that thereafter restrict access to the new civil complaints are subject to constitutional scrutiny, with the court bearing the burden of showing that such policies and practices are essential to preserve an overriding governmental interest and narrowly tailored to serve that interest. Courthouse News has a First Amendment right of access to new civil complaints filed with South Dakota state courts.

6. When access to these new complaints is restricted, and they are withheld from the press and public, the news they contain grows stale. The public is left unaware that a civil action has commenced and that a litigant has invoked the power of the judicial branch of government. A delay of even one day means that by the time the complaint can be reported, the news of its filing has already been overtaken by the next day's news and is less likely to ever come to the public's attention.

7. The restrictions on access experienced by Courthouse News in Pennington, Minnehaha and Lincoln Counties, and throughout the South Dakota courts, are the result of Defendants' policy and practice of barring access to new e-filed civil complaints until after they have been administratively processed by court staff. New complaints e-filed into South Dakota's e-filing system, called Odyssey File & Serve, are received into an electronic database where they reside—withheld from public view and effectively sealed—while they await manual processing by court staff.

8. Without Defendants' no-access-before-processing policy, there would be no restriction and no delay. The restriction is unnecessary, as demonstrated by the many state and federal courts across the country that provide access to new complaints on receipt, regardless of whether court staff have completed administrative processing. Defendants are capable of providing such access but have chosen not to.

9. Courthouse News brings this action to address constitutional wrongs, to challenge the legality of Defendants' policies and practices in Pennington, Minnehaha and Lincoln Counties, and to seek declaratory and injunctive relief prohibiting Defendants from enforcing their policies and practices that result in violations of Courthouse News' constitutional right of access to newly e-filed civil complaints.

## JURISDICTION AND VENUE

10. Courthouse News' claims arise under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act, Title 42 U.S.C. § 1983, *et seq*. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 2201 (declaratory relief). Defendants are subject to personal jurisdiction in this District.

11. Venue is proper in this District under 28 U.S.C. § 1391(b), and in this Division, because the Minnehaha and Lincoln County Circuit Courts are located in this District, and because a substantial part of the events or omissions giving rise to Courthouse News' claims occurred in this District and in this Division. The First Amendment violations giving rise to this action took place throughout the state of South Dakota, at each of the South Dakota courts.

## PARTIES

12. Courthouse News is a nationwide news service founded almost 30 years ago out of a belief that a great deal of news about civil litigation went unreported by traditional news media, a trend that has only increased in the last decade. Courthouse News now employs approximately 240 people, most of them editors and reporters, covering state and federal trial and appellate courts in all 50 states in the United States.

13. Defendant Gregg Sattizahn is the South Dakota State Court Administrator and is named as a defendant herein in that official capacity. Defendant Sattizahn, in his official capacity as Administrator, is responsible for, among other things, the administration of the statewide e-filing and case management systems used by the South Dakota Courts and public access to court records through those systems, including through any systems licensed from or otherwise provided by third parties, such as Tyler Technologies ("Tyler"), the software vendor for South Dakota's statewide e-filing system—Odyssey File & Serve.

14. Defendant Karl Thoennes is the Circuit Court District Administrator for Minnehaha and Lincoln County Circuit Courts, and is named as a defendant herein in that official capacity. Defendant Thoennes, in his official capacity, is responsible for, among other things, the administration of e-filed complaints in the Minnehaha and Lincoln County Circuit Courts.

15. Defendant Liz Hassett is the Circuit Court District Administrator for Pennington County Circuit Courts, and is named as a defendant herein in that official capacity. Defendant Hassett, in her official capacity, is responsible for, among other things, the administration of e-filed complaints in the Pennington County Circuit Court.

16. Courthouse News is informed and believes that Defendants are responsible for providing access to new complaints filed in the Pennington, Minnehaha and Lincoln County Circuit Courts. Acting in their official capacities, Defendants, and those acting under their direction and supervision, are directly involved with and/or responsible for the delays in access to new complaints experienced by Courthouse News and other members of the press, which acts reflect the official policies and practices of the Defendants' offices.

17. Defendants' actions, as alleged in this Complaint, are under the color of South Dakota law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

18. Defendants are sued in their official capacities only. Courthouse News seeks relief against Defendants as well as their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them or at their direction or under their control.

## FACTS

**A.     Courthouse News Reports Daily News From Courts Throughout the Nation, Including South Dakota.**

19.     Courthouse News offers its readers a variety of publications.  Its *New Litigation Reports* contain original, staff-written summaries of significant new civil lawsuits, and are sent to subscribers via e-mail each evening.

20.     Among Courthouse News' other publications are a monthly newsletter, the *Entertainment Law Digest*, and the *Daily Brief*, which covers published, nationwide appellate rulings, including all United States Supreme Court and federal circuit decisions and significant rulings from the federal district courts.

21.     Courthouse News also publishes a freely available website, www.courthousenews.com, featuring news reports and commentary, which is read by roughly 30,000 people every weekday.  The website functions much like a print daily newspaper, featuring staff-written articles from across the nation that are posted throughout each day and rotated on and off the page on a 24-hour news cycle. On its news page for March 8, 2024, Courthouse News published stories covering President Biden's State of the Union address, Sen. Dick Durbin's criticism of Sen. J.D. Vance's obstruction of U.S. Attorney nominees, a science story on how marine invertebrates adapt to climate change, a California appeals court decision overturning a Bakersfield ordinance fast-tracking new oil wells, a New York appeals court decision reinstating a Sierra Club suit challenging state plans for a crypto-currency mining power plant,  an ongoing First Amendment case in Maryland, and an antitrust action filed against Google over its dominance of internet advertising, among other stories.

22.     Courthouse News has been credited as the original source of reporting on various topics by a wide range of publications, including:  *The Mercury News, ABA Journal*, ABC News,

6

*The Atlantic*, *Austin American Statesman*, Black Christian News Network, *California Bar Journal*, CBS News, *The Christian Science Monitor*, The Daily Beast, *The Dallas Morning News*, Forbes, Fox News, *The Guardian*, The Hill, *Houston Chronicle*, The Huffington Post, *Long Island Press*, *Los Angeles Times*, *Mother Jones*, National Public Radio (NPR), NBC News, *New York Daily News*, *New York Magazine*, *The New York Times*, *The Orange County Register*, Politico, *Rolling Stone*, *Salt Lake City Tribune, San Antonio Express-News*, Slate, *The Telegraph* (UK), *The Wall Street Journal*, *The Washington Post*, *The Washington Times*, *Women's Health Policy Report*, United Press International (UPI), *USA Today*, *U.S. News and World Report*, and the YouTube news channel. American, Canadian, and New Zealand radio shows have also interviewed Courthouse News' reporters. Courthouse News has been credited specifically on news reports tied to South Dakota by authors writing for a variety of news outlets, including an opinion piece by Kristi Noem in the Argus Leader regarding estate taxes, a piece in the Dakota Free Press reacting to Noem's opinion, in addition to stories in national news outlets crediting Courthouse News articles on voting hurdles in South Dakota for Sioux residents, pipeline protests, a South Dakota artist's upcoming trial in a suit against movie actor Kevin Costner, and a South Dakota beef producer's suit against ABC and Diane Sawyer.

23.     Courthouse News has more than 2,300 subscribers nationwide, including law firms, law schools, government offices, and news outlets such as: The Associated Press, *The Atlanta Journal Constitution*, *The Boston Globe*, CNN, *The Dallas Morning News*, *Detroit Free Press*, International Consortium of Investigative Journalists, Fox Entertainment Group, *Honolulu Civil Beat, Las Vegas Review-Journal*, *Los Angeles Times*, NBC News Digital, North Jersey Media Group, *Pacific Coast Business Times*, *Portland Business Journal*, *St. Paul Business Journal*, *The*

*Salt Lake Tribune*, *The San Jose Mercury News*, *San Antonio Express News*, *Tampa Bay Business Journal*, *The Wall Street Journal*, Variety, Walt Disney Company, and Warner Bros.

24. Courthouse News subscribers also include educational institutions, including Boston University, Columbia Journalism Investigations, MIT School of Management, Stanford University, University of Chicago, University of Maryland – College of Journalism, University of North Carolina at Chapel Hill, University of Virginia School of Law, and Drake University Law Library.

25. Despite its reach, Courthouse News remains a small company. At great expense, it has undertaken litigation against large state bureaucracies that are using publicly-funded legal teams to deny the tradition and the right of access.

26. In South Dakota, Courthouse News covers general civil litigation, focusing on actions brought against business entities and public institutions. This reporting is included in the Great Plains Regional Report sent to subscribers every weekday evening.

27. Courthouse News does not report on or seek to review the small number of new civil complaints that are statutorily confidential or otherwise not open to the public, or complaints that are accompanied by a motion to seal. Courthouse News also does not report on or seek to review complaints or case-initiating documents filed in non-civil case categories, such as criminal, juvenile or family case categories.

28. To prepare the South Dakota section of the Great Plains Regional Report and identify new civil cases that may warrant a website article, Courthouse News reporters go to any South Dakota courthouse where the reporter can use public terminals to review new civil complaints filed across the state. However, access to newly-submitted complaints is restricted, and they are not made available on the terminals, until after they are administratively processed by

court staff. This unnecessary restriction on access results in delayed access to new civil complaints filed with the South Dakota state courts.

29. Given the nature of the coverage in the *New Litigation Reports* and its other news publications, including its website, any delay in the ability of a reporter to obtain and review new complaints necessarily holds up Courthouse News' reporting of new controversies for subscribers and readers.

30. For the period January 1, 2023 to date, Courthouse News' tracking of South Dakota circuit courts in the top 20 most populous counties shows that roughly 40% of new civil complaints were withheld for at least one day following submission and that roughly 15% of the total were withheld for two days or more, with substantial variations among individual circuit courts.

**B.     The First Amendment Right of Access Attaches to Civil Complaints When the Court Receives Them.**

31. A right of access grounded in the First Amendment applies to non-confidential civil complaints.

32. The analysis of a claim alleging a violation of the First Amendment right of access to court documents involves a two-step process. The first step is to determine whether, as a general matter, there is a First Amendment right of access to a particular court proceeding or document. If the answer to that question is "yes," the court proceeds to the second step, which is to determine if the restrictions on access to that court proceeding or document satisfy Constitutional scrutiny. *See, e.g.*, *Courthouse News Serv. v. Planet*, 947 F.3d at 581, 589-97 (9th Cir. 2020) ("*Planet III*") (discussing and applying two-step process established by *Press-Enterprise Co. v. Superior Ct.* ("*Press-Enterprise II*"), 478 U.S. 1 (1986)).

33. To answer the question posed by the first step of the analysis, courts in the Eighth Circuit generally apply the *Press-Enterprise II* "experience and logic" test. *Flynt v. Lombardi*,

9

885 F.3d 508, 512-13 (8th Cir. 2018); *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th 768, 792 (8th Cir. 2021) (discussing test to determine whether there is a First Amendment right of access to a civil court filing). To meet this test, a party must establish "(1) a historical tradition of accessibility, and (2) a significant positive role for public access in the functioning of the judicial process in question." *Flynt*, 885 F.3d at 512-13 (citing *Press-Enterprise II* as "setting forth what is now commonly referred to as the 'experience and logic' test for First Amendment access to judicial records.").

34. "[T]he federal courts of appeal[] widely agree" that the First Amendment right of access to information reaches civil judicial proceedings and records, and "every circuit court to consider the issue has uniformly concluded that the right applies to both civil and criminal proceedings." *Planet III*, 947 F.3d. at 590 (citing *Dhiab v. Trump*, 852 F.3d 1087, 1099 (D.C. Cir. 2017) (Rogers, J., concurring in part and concurring in the judgment) (collecting cases)). This right of access applies specifically to civil complaints.

35. Applying the "experience and logic" test, courts across the nation have recognized the existence of a qualified First Amendment right of access that attaches to non-confidential civil complaints upon their receipt by a court. *See, e.g.*, *Planet III*, 947 F.3d at 591 ("Both sides before us agree that experience and logic support a public right of access to newly filed civil complaints"); *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 141 (2d Cir. 2016) ("Experience and logic both support access" to civil complaints); *Courthouse News Serv. v. New Mexico Admin. Off. of the Cts.*, 53 F.4th 1245, 1262 (10th Cir. 2022) ("[T]he First Amendment right of access attaches to complaints when the court receives them, regardless of the technical terms and clerical processes used by the court."); *Courthouse News Serv. v. Schaefer*, 440 F. Supp. 3d 532, 557-559 (E.D. Va. 2020) ("[T]he Court finds that the experience and logic test is satisfied

and finds that the public and press enjoy a qualified First Amendment right of access to newly-filed civil complaint."); *Courthouse News Serv. v. Gabel*, 2021 WL 5416650, at *13 (D. Vt. Nov. 19, 2021) ("A qualified First Amendment right of access attaches when a complaint is electronically filed.").

36. "There is no dispute that, historically, courts have openly provided the press and general public with access to civil complaints." *Schaefer*, 440 F. Supp. 3d at 557; *accord Bernstein*, 814 F.3d at 141 ("Complaints have historically been publicly accessible by default . . . .").

37. A new complaint serves as the opening bell in a legal dispute. In recognition of the media's traditional role as a surrogate observer for the general public as to what is happening in the courts, it has been a long-standing tradition for courts to provide reporters—especially those who visit the courts daily—with access to new civil complaints upon receipt for filing and before administrative processing. This ensures that interested members of the public learn about new cases contemporaneously with their filing, while those cases are still newsworthy and likely to be the subject of public attention and discussion.

38. Historically, reporters covering the courts could review and report on newly-filed cases which generally occurred upon the court's receipt of a new complaint and before the clerk's office performed the additional administrative tasks that follow the receipt of a new complaint—a process that was traditionally called "docketing" but in recent years, especially as courts have moved to electronic case management systems and e-filing, has been referred to as "processing."

39. Courthouse News has also collected evidence showing that, in states where it covers the courts in person on a regular basis, there is a history of access to new civil actions upon receipt of the pleading regardless of whether court staff have completed clerical processing in every region of the United States—north (Michigan and Wisconsin), south (Alabama, Arkansas, Georgia,

Louisiana, Tennessee, Texas, and Virginia), central (Colorado, Illinois, Nebraska, Ohio, Oklahoma, and Utah), east (Connecticut, New Jersey, New York, Pennsylvania, and Vermont), and west (Alaska, Arizona, California, Hawaii, Nevada, Oregon, and Washington). This evidence "demonstrat[es] that there is a long history of courts making complaints available to the media and the public soon after they are received"—"rather than after it is 'processed'"—"regardless of whether such courts use paper filing or e-filing systems." *Courthouse News Serv. v. Planet*, 2016 WL 4157210, at *12-13 (C.D. Cal. May 26, 2016). Individual judges are also familiar with the tradition based on their experience. As noted above, Judge Bobby Shepherd said from the Eighth Circuit bench: "There was a time when—and some in this room may remember it—when you took a pleading to the courthouse and the clerk stamped it physically and it went into different bins and it was available immediately." During the same hearing in 2022, Judge Ralph R. Erickson, addressing government counsel, added the following: "What we're saying is that, oh, for about 230 years, you can walk into a Missouri courthouse, into the clerk's office, and say, 'Hey, can I see what's been filed today?' And now all of a sudden you can't, right?".

40. "Logical considerations also support a presumption of public access." *Bernstein*, 814 F.3d at 141.

41. The First Amendment right of access exists to enable free and informed discussion about governmental affairs, which includes ongoing judicial proceedings. Courthouse News facilitates those important discussions by covering courts on a daily basis and seeking timely access to newly filed civil actions in order to report on their contents.

42. The filing of a lawsuit invokes the authority of the courts, and the American people have a First Amendment right to know that a plaintiff has invoked that power to resolve a dispute

and achieve a personal end. The complaint is the basis for the dispute and plays a significant role throughout all phases of the litigation.

43. Public access to the complaint allows the public to supervise the judicial process by allowing the public to know the parties to the dispute, the alleged facts, the issues for trial, and the relief sought. Public access to the complaint also allows the public to understand the activity of the courts, enhances the accountability of the court system, and informs the public of matters of public concern. When a complaint is withheld from the public, it leaves the public unaware that a claim has been levelled and that state power has been invoked.

C. **Restricting Access to New Civil Complaints Infringes Upon Courthouse News' First Amendment Rights.**

44. Where the qualified First Amendment right of access attaches to a particular court process or document, as it does with new civil complaints, the right attaches upon the court's receipt of the document, and the press and public generally have a right of contemporaneous access. *See, e.g.*, *New Mexico Admin. Off. of the Cts.*, 53 F.4th at 1269 ("[A] necessary corollary of the right to access is a right to timely access."); *Planet III*, 947 F.3d at 588, 591 (holding the qualified right of access to newly filed civil actions attaches when the lawsuit is filed, *i.e.*, when it is received by the court); *Courthouse News Serv. v. Jackson*, 2009 WL 2163609, at *4 (S.D. Tex. July 20, 2009) ("In light of the values which the presumption of access endeavors to promote, a necessary corollary to the presumption is that once found to be appropriate, access should be immediate and contemporaneous."); *Courthouse News Serv. v. Tingling*, 2016 WL 8505086, at *1 (S.D.N.Y. Dec. 16, 2016); *Schaefer*, 440 F. Supp. 3d at 559 (the public and press have a "contemporaneous right of access" to newly filed civil actions—meaning "on the same day as filing, insofar as practicable").

45. Turning to the second analytical step of a claim alleging a violation of the First Amendment right of access, after the court determines the right of access attaches to a particular

record or proceeding, a presumption of access arises that may be restricted only if "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press-Enterprise II*, 478 U.S. at 13-14; *accord Planet III*, 947 F.3d at 596; *Bernstein*, 814 F.3d at 144; *Schaefer*, 440 F. Supp. 3d at 559-60.  Here, Defendants' policies are not essential to preserve higher values and are not narrowly tailored.

46.  Since South Dakota's adoption of e-filing, access delays have become pervasive. Unlike many state courts, South Dakota state courts do not make newly filed complaints available upon e-filing with the court.  Instead, they effectively seal the complaints while they sit in a database, allowing access only after court staff have processed them and placed them in the public docket.  As a direct result, for the period of January 1, 2023 to date Courthouse News' tracking of the South Dakota circuit courts in the 20 most populous counties shows that the South Dakota state courts withheld roughly 40% of new civil complaints from the public for a period of between one and two days, at times longer.  Individual circuit courts withheld a higher percentage of complaints.

47.  The delays in access experienced by Courthouse News at the Pennington, Minnehaha and Lincoln County Circuit Courts, and throughout South Dakota state courts, are unnecessary and easily avoidable.  Courts across the nation provide the press and public timely access to new e-filed civil actions through means readily available to Defendants.

48.  Historically, before e-filing, reporters covering courts around the nation could review and report on newly filed, paper civil complaints on the day of filing by looking at them at the courthouse at any time during the day.  Federal courts throughout the nation commonly kept a polished, wooden box on the intake counter where new complaints were placed right after they crossed the counter.

49. Compared to the paper era, providing timely access in an e-filing court is even easier. An e-filed complaint is simply a .pdf document that can be downloaded and viewed. Nothing prevents a reporter from reviewing a new complaint before it is processed by a clerk, nothing prevents a clerk from processing a complaint at the very moment members of the press or public are reading it, and nothing prevents a clerk from processing a complaint after review by the press or public, when the clerk's schedule permits.

50. Moreover, courts can take steps tailored towards safeguarding confidential filings or information *without* restricting access to *every* non-confidential civil complaint pending completion of processing and, thus, overburdening the First Amendment. For instance, courts can automatically segregate confidential filings based on designations made by the filer in the e-filing interface. They can also require e-filers to select "confidential" or "public" from the e-filing interface when submitting their documents, or post warnings on the e-filing interface to clarify what designations should be made for particularly sensitive filings. Additionally, even though courts typically put the onus on filers to redact personal information, many courts also require filers to check a box in the e-filing interface confirming that social security numbers, financial account numbers or other private information has been redacted, which is what the federal courts require.

51. In addition, access can by controlled by a number of factors, including the requirement of a user name and password and payment of a fee, as is done for remote access in many state courts and all federal courts.

52. As was the case in the paper world, access in e-filing courts is delayed only if courts withhold new civil actions until after court staff complete administrative processing. Because most courts do not complete these clerical tasks for all the day's new civil actions on the day of filing,

the result of a no-access-before-process policy is to prevent the press from learning about a substantial percentage of new civil actions until at least the day after filing, at which point the information is old news and less likely to capture the public's attention.

53.     Processing new complaints is not the problem.  All e-filing courts must conduct some administrative processing of new complaints.  Delays happen when a court restricts access to new complaints at the front end of the e-filing system where they are received and withholds new complaints from the press and public until after they are processed into the case management system also often called the docket.

54.     Courts that provide access as e-filed complaints are received, regardless of whether court staff have completed clerical processing, include nearly all federal district courts and state courts in Alabama, Arizona, California (nearly all e-filing courts, covering 85% of the state's population), Connecticut, Florida, Georgia (courts in Atlanta metropolitan area), Hawaii, Nevada (in the state's biggest court in Las Vegas), New York, Ohio (Cleveland and Columbus), Texas (Austin), Utah, Vermont, and Washington (Tacoma).  The Missouri and New Mexico state courts are both currently in the process of developing systems that, once implemented, will also provide access to new e-filed complaints as they are received, and regardless of whether court staff have completed clerical processing. In addition, Iowa state courts recently agreed to provide on-receipt access on a statewide basis. These courts use a great variety of vendors to provide on-receipt access, including Tyler, Journal Technologies, Tybera, Granicus, OLIS, PeachCourt and ProWare, in addition to home-grown access systems developed by Hawaii, Washington, Connecticut, New York, Missouri and individual superior courts in California. These courts provide on-receipt access through terminals at the courthouse or through a controlled online site or, most often, both. Online access is controlled through requirements of application, approval, terms of use, a user name, a

password, the ability to revoke approval if necessary, and, in many of the courts, payment of a subscription fee.

55. Courts, like those identified above, that do not withhold public access for processing allow new civil actions to be read and reported when they are received by the court—when the new action is still newsworthy and capable of commanding public attention.

56. Through letters sent in October and September of 2022, Courthouse News asked Defendants Sattizahn and Thoennes to allow access to new e-filed complaints when they are received and explained the alternatives available to Defendants for providing such access, including an alternative that Tyler, the vendor who provides and supports South Dakota's Odyssey File & Serve e-filing system, offers for free. Defendant Sattizahn sent two letters in response, saying he did not have the budget to pay for one of the alternatives and otherwise failing to offer access at the time of receipt. Defendants continue to withhold access to new e-filed complaints until after processing. As a result, Courthouse News continues to experience significant delays in gaining access to new civil petitions e-filed in the South Dakota courts.

## **COUNT ONE – VIOLATION OF U.S. CONST. AMEND. I AND 42 U.S.C. § 1983**

57. Courthouse News incorporates the allegations of Paragraphs 1-56 herein.

58. Defendants' actions under color of state law, including without limitation their policies and practices of withholding newly filed, non-confidential civil complaints from press and public view until after administrative processing, and the resulting denial of timely access to new civil complaints upon receipt for filing, deprives Courthouse News, and by extension its subscribers, of their right of access to public court records secured by the First Amendment to the United States Constitution.

59. The qualified First Amendment right to access new civil complaints filed in the Pennington, Minnehaha and Lincoln County Circuit Courts arises the moment those complaints are filed, and access may be restricted only if the restriction is essential to preserve an overriding government interest and is narrowly tailored to serve that interest. For Defendants' policies and practices to survive *Press-Enterprise II*'s two-prong balancing test, Defendants "must demonstrate that (1) 'there is a "substantial probability" that [an overriding government interest] would be impaired by immediate access'; and (2) 'no reasonable alternatives exist to "adequately protect" that government interest.'" *New Mexico Admin. Off. of the Cts.*, 53 F.4th at 1270. Defendants cannot satisfy either prong of this test with respect to the policies and practices alleged in this Complaint.

60. Courthouse News has no adequate remedy at law to prevent or redress Defendants' unconstitutional actions, and will suffer irreparable harm as a result of Defendants' violation of its First Amendment rights. Courthouse News is therefore entitled to a declaratory judgment and a preliminary and permanent injunction to prevent further deprivation of the First Amendment rights guaranteed to it and its subscribers.

## PRAYER FOR RELIEF

WHEREFORE, Courthouse News prays for judgment against Defendants as follows:

1. A declaratory judgment pursuant to 28 U.S.C. § 2201 declaring Defendants' policies and practices that knowingly affect delays in access to newly filed civil unlimited complaints, including, inter alia, their policy and practice of denying access to complaints until after administrative processing, are unconstitutional under the First and Fourteenth Amendments to the United States Constitution because these policies and practices constitute an effective denial

of timely public access to new civil complaints, which are public court records to which the First Amendment right of access applies;

2.   A preliminary and permanent injunction against Defendants, including their agents, assistants, successors, employees, and all persons acting in concert or cooperation with them, or at their direction or under their control, prohibiting them from continuing their policies and practices that deny Courthouse News timely access to new non-confidential civil complaints, including, inter alia, their policy and practice of denying access to complaints until after administrative processing;

3.   An award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

4.   All other relief the Court deems just and proper.

Date:   March 15, 2024                                Respectfully submitted,

By: /s/ *Brendan V. Johnson*

Brendan V. Johnson [SD Bar No. 3263]
ROBINS KAPLAN LLP
150 E 4th Place, Suite 704
Sioux Falls, SD 57104
Tel. (605) 335-1300
Fax (605) 740-7199
BJohnson@RobinsKaplan.com

Herbert R. Giorgio, Jr. (MO #58524)*
Aaron V. Yuratovich (MO #74916)*
BRYAN CAVE LEIGHTON PAISNER LLP
211 N. Broadway, Suite 3600
St. Louis, MO  63102
Tel. (314) 259-2000
Fax (314) 259-2020
herb.giorgio@bclplaw.com
aaron.yuratovich@bclplaw.com
**admission pro hac vice pending*

*Attorneys for Plaintiff Courthouse News Service*

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Courthouse News Service

### DEFENDANTS
GREG SATTIZAHN, in his official capacity as South Dakota State Court Administrator; KARL THOENNES, in his official

**(b)** County of Residence of First Listed Plaintiff: Los Angeles County, CA
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Hughes County, SD
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Brendan V. Johnson, Robins Kaplan LLP, 150 E 4th Place, Suite 704, Sioux Falls, SD 57104

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*
- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**TORTS — PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**TORTS — PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**CIVIL RIGHTS**
- [x] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS — Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

**Other:**
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*
- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1983

Brief description of cause:
Media organization seeking injunctive relief regarding violation of First Amendment.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [ ] Yes  [x] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE: Mar 15, 2024

SIGNATURE OF ATTORNEY OF RECORD: s/ Brendan V. Johnson

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____